1  BENJAMIN B. WAGNER
   United States Attorney
2  KYLE REARDON
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  (916) 554-2700
   (916) 554-2900 (FAX)



**FILED**

MAY 0 1 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:11-CR-327 MCE |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| LATRELLE ALICIA HORNBUCKLE, | DATE: May 3, 2012 |
| Defendant. | TIME: 9:00 a.m. |
| | COURT: Hon. Morrison C. England |

## I.

### INTRODUCTION

**A. Scope of Agreement:** The indictment in this case charges the defendant with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 371; 10 counts of Sex Trafficking, in violation of 18 U.S.C. § 1591; and one count of Tampering with a Witness, in violation of 18 U.S.C. § 1512(b). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of

1

California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B. Court Not a Party:** The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea:** The defendant will plead guilty to Counts Twelve of the Indictment, Tampering with a Witness, in violation of 18 U.S.C. § 1512(b)(3). The defendant agrees that she is in fact guilty of these charges, and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

**B. Financial Obligations:**

**1. Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. In addition to that restitution, the defendant agrees that the Court may order full restitution to any person who would qualify as a victim of the following offenses under 18 U.S.C. § 3663 or 3663A

had the defendant been convicted of such an offense. Payment should be by cashier's or certified check made payable to the Clerk of the Court. The defendant understands that this plea agreement is voidable by the government if she fails to pay the stipulated restitution prior to her scheduled court appearance for sentencing. Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

    **2. Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable by the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**C. Agreement to Cooperate:** The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all

1 documents, records, or other tangible evidence requested by the
2 government; (4) not to participate in any criminal activity while
3 cooperating with the government; and (5) to disclose to the
4 government the existence and status of all money, property, or
5 assets, of any kind, derived from or acquired as a result of, or used
6 to facilitate the commission of, the defendant's illegal activities
7 or the illegal activities of any conspirators.

8 If the defendant commits any crimes or if any of the defendant's
9 statements or testimony prove to be knowingly false, misleading, or
10 materially incomplete, or if the defendant otherwise violates this
11 plea agreement in any way, the government will no longer be bound by
12 its representations to the defendant concerning the limits on
13 criminal prosecution and sentencing as set forth herein. The
14 determination whether the defendant has violated the plea agreement
15 will be under a probable cause standard. If the defendant violates
16 the plea agreement, she shall thereafter be subject to prosecution
17 for any federal criminal violation of which the government has
18 knowledge, including but not limited to perjury, false statements,
19 and obstruction of justice. Because disclosures pursuant to this
20 plea agreement will constitute a waiver of the Fifth Amendment
21 privilege against compulsory self-incrimination, any such prosecution
22 may be premised on statements and/or information provided by the
23 defendant. Moreover, any prosecutions that are not time-barred by
24 the applicable statute of limitations as of the date of this plea
25 agreement may be commenced in accordance with this paragraph,
26 notwithstanding the expiration of the statute of limitations between
27 the signing of this plea agreement and the commencement of any such
28 prosecutions. The defendant agrees to waive all defenses based on

the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this plea agreement.

If it is determined that the defendant has violated any provision of this plea agreement or if the defendant successfully moves to withdraw her plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals:** The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except as provided in paragraphs II.C. and VII.B.

**B. Recommendations:**

**1. Incarceration Range:** The government will recommend that the defendant be sentenced within the applicable guideline range for her offense (including the application of the mandatory statutory

minimum term) as determined by the United States Probation Office.

**2. Acceptance of Responsibility**: If the United States Probation Office determines that a three-level reduction in the defendant's offense level for her full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**3. Reduction of Sentence for Cooperation**: The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% or more of the applicable guideline sentence if she provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that she must comply with Part II.C of this Plea Agreement. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance. The defendant understands that the government may recommend a reduction in her sentence of less than 50% or no reduction at all, depending upon the level of assistance the government determines that the defendant has provided. The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right upon the

defendant to require that the government make a § 5K1.1 motion, and that this Plea Agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw her plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following her sentencing, the government may move for a further reduction of her sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**C. Limitation on Use of Information for Sentencing**: Other than as set forth above, the government agrees that any incriminating information provided by the defendant during her cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8.

## IV.

### ELEMENTS OF THE OFFENSE

**A. Elements of the Offense:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty,

    **1. Tampering with a Witness, 18 U.S.C. § 1512(b)(3):**

        a. The defendant intimidated, threatened, or corruptly persuaded another person, or attempted to do so;

        b. The defendant did so knowingly; and

        c. The defendant did so with the intent to hinder, delay, or prevent communication to a law enforcement officer or judge of the United States information relating to the commission of a

Federal offense.

## V.

## MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1512(b)(3) is 20 years imprisonment, a fine of $250,000, a three-year term of supervised release, and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is <u>not</u> restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B. Violations of Supervised Release:** The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI.

## SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands

that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Guidelines Calculation**: The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

    **1. Applicable Sentencing Guideline**: The parties stipulate to the application of USSG § 2G1.2. See USSG § 1B1.2.

    **2. Offense Level**:

        a. <u>Base Offense Level</u>: The base offense level is 28. See USSG § 2G1.3(a)(3).

        b. <u>Specific Offense Characteristics</u>:

        (1) Two levels are added because a participant unduly influenced a minor to engage in prohibited sexual conduct. Id. at (b)(2).

        (2) Two levels are added because the offense involved a commercial sex act. Id. at (b)(4).

        c. The total offense level for this count is 32.

        d. <u>Cross-Reference</u>: Pursuant to USSG §§ 2G1.3(d)(1)

and 3D1.2(d), the offenses relating to each of the victims in the case are specifically excluded from the grouping rules. Because there are at least three victims in this case, there are no less than three groups of offenses that each count as a unit. See USSG § 3D1.4(a). At least three (3) levels are therefore added to the highest offense level. Id.

   **3.**   **Total Offense Level**: The total offense level is no less than 35.

   **4.**   **Adjustments**:

   a. Role Adjustment: Two levels are subtracted because the defendant was a minor participant in the scheme to prostitute minors, and to prostitute minors and adults through force, fraud, and coercion. See USSG § 3B1.2(b).

   b. Acceptance of Responsibility. See paragraph III(B)(2) above.

   c. Adjusted Offense Level: The parties anticipate that the adjusted offense level will be no less than 30.

   **5.**   **Criminal History**: The defendant's criminal history will be determined by the United States Probation Office.

   **6.**   **Departures or Other Enhancements or Reductions**: The parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references. The defendant is permitted to make an argument in mitigation pursuant to 18 U.S.C. § 3553. The government specifically reserves the right to oppose any variance under 18 U.S.C. § 3553, and may respond to any argument for a variance made by the defendant.

# VII.

# WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives her a right to appeal her conviction and sentence. She agrees as part of her plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as her sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth above about the Sentencing Guidelines variables (that is, an adjusted offense level of 30 or below). She specifically gives up her right to appeal any order of restitution the Court may impose.

Regardless of the sentence she receives, the defendant also gives up any right she may have to bring a post-appeal attack on her conviction or her sentence. She specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking her conviction or sentence.

Notwithstanding the agreement in paragraph III.A. above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate her plea, dismiss the underlying

charges, or reduce or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses she might have to the government's decision. In particular, she agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs**: The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 4/30/12

OLAF HEDBERG
Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 4/30/12

LATRELLE ALICIA HORNBUCKLE
Defendant

**C. Attorney for United States:** I accept and agree to this plea agreement on behalf of the government.

DATED: 5/1/12

BENJAMIN B. WAGNER
United States Attorney

By: KYLE REARDON
Assistant U.S. Attorney

**EXHIBIT "A"**

**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Starting in 2008, the defendant worked with her sisters to pimp-out minor females, and to pimp-out minors and adults using force, fraud, and coercion. At that time, a runaway started working as a prostitute for the defendant's sister, Tynisha Hornbuckle. This victim, "P.H.," continued to work for Tynisha Hornbuckle until August 2011. During this time, victim "A.Hi.," also worked for Tynisha Hornbuckle. The defendant knew that "P.H." and "A.Hi." were minors when they worked for Tynisha Hornbuckle. Jackie Wade was an adult female that worked as a prostitute for Tynisha Hornbuckle.

Tynisha Hornbuckle was also the pimp for another victim, "A.He.". After she became scared of Tynisha Hornbuckle, victim "A.He." started working as a prostitute for Tamrell Hornbuckle.

The defendant knew that her sisters received money from the minor and adult females that worked as prostitutes for them.

The females took orders from Tynisha and Tamrell about when to work, where to work, how much to charge, and with whom to do dates. Dates were generally arranged through cell phone calls made to phones controlled by Tynisha and Tamrell. At the conclusion of the date, the victims would generally call their pimp to pick them up. Dates would also occasionally take place at local motels. These motels were often near major interstates, and they served interstate travelers.

In addition to Tynisha and Tamrell, the defendant's other sister, Cherrelle Hornbuckle, were part of a conspiracy to sex traffick minors, and to sex traffick adults and minors through force, fraud,

and coercion. The defendant's mother was also aware of the fact that he daughters were pimping out underage females.

On May 5, 2011, the defendant met with "A.He." During that meeting, the defendant, Tamrell Hornbuckle, and "A.He." spoke about the fact that the Hornbuckles and the girls and women who worked for them as prostitutes were being investigated by the Federal Bureau of Investigation (FBI). In response to "A.He.'s" questions about what she should say if questioned by the FBI, the defendant told "A.He." to lie, and to tell the FBI that she is friends with the defendant, but does not know the rest of the Hornbuckle family. This statement was false. The defendant also told "A.He." that if she were called to testify, she should say nothing. The defendant and Tamrell Hornbuckle discussed various facts in the case and possible deceptive and false answers "A.He." could give to the FBI if asked about those facts. For instance, as it concerned a photograph of "A.He." located on Tamrell Hornbuckle's phone that was sent to an undercover FBI agent during a prostitution sting, the defendant and Tamrell Hornbuckle told "A.He." to tell the FBI that Tamrell Hornbuckle had the photograph because "A.He." had sent it to her and Tamrell Hornbuckle liked girls. In truth, as the defendant well knew, Tamrell Hornbuckle had this photograph of "A.He." on her phone because she used it to send to potential customers when they inquired about girls who might be available for prostitution services.

All of the activity described above occurred in and around Sacramento, California, in the State and Eastern District of California.

3

Plea Agreement
U.S. v. Latrelle Hornbuckle
2:11-CR-327 MCE