```
BENJAMIN B. WAGNER
United States Attorney
KYLE REARDON
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
```



FILED

MAY - 3 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
           DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>TYNISHA MARIE HORNBUCKLE,<br><br>    Defendant. | CASE NO. 2:11-CR-327 MCE<br><br>**PLEA AGREEMENT**<br><br>DATE: May 3, 2012<br>TIME: 9:00 a.m.<br>COURT: Hon. Morrison C. England |

## I.

## INTRODUCTION

**A. Scope of Agreement:** The indictment in this case charges the defendant with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 371; 10 counts of Sex Trafficking, in violation of 18 U.S.C. § 1591; and one count of Tampering with a Witness, in violation of 18 U.S.C. § 1512(b). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local

1

prosecuting, administrative, or regulatory authorities.

**B. Court Not a Party:** The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea:** The defendant will plead guilty to Counts Four and Eight, Sex Trafficking of Children, or by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). The defendant agrees that she is in fact guilty of these charges, and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

**B. Financial Obligations:**

**1. Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. In addition to that restitution, the defendant agrees that the Court may order full restitution to any person who would qualify as a victim of the following offenses under 18 U.S.C. § 3663 or 3663A

had the defendant been convicted of such an offense. Payment should be by cashier's or certified check made payable to the Clerk of the Court. The defendant understands that this plea agreement is voidable by the government if she fails to pay the stipulated restitution prior to her scheduled court appearance for sentencing. Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**2. Special Assessment:** The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable by the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals:** The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except as provided in paragraph VII.B.

**B. Recommendations:**

**1. Incarceration Range:** The government will recommend that the defendant be sentenced within the applicable guideline range for her offense (including the application of the mandatory statutory

minimum term) as determined by the Court.

   2.  **Acceptance of Responsibility**: If the United States Probation Office determines that a three-level reduction in the defendant's offense level for her full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

## IV.

### ELEMENTS OF THE OFFENSE

**A. Elements of the Offense**: At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty,

   **1. Participating in a Sex Trafficking Venture, 18 U.S.C. § 1591(a)(1) and (b)(2):**

   a.  the defendant knowingly recruited, enticed, harbored, transported, provided, or obtained a person by any means;

   b.  the defendant did so knowing that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act; and

   c.  the defendant's actions of recruiting, enticing, harboring, transporting, providing, or obtaining, were in and affecting interstate commerce.

## V.

## MAXIMUM SENTENCE

A. **Maximum Penalty:** The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1591(a)(1) and (b)(2) is not less than 10 years imprisonment and up to life, a fine of $250,000, a period of supervised release of not less than five years and up to life, and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is <u>not</u> restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

B. **Violations of Supervised Release:** The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI.

## SENTENCING DETERMINATION

A. **Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands

that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Guidelines Calculation**: The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

**1. Offense Level:**

 a. <u>Base Offense Level</u>: The base offense level is 30. See U.S.S.G. § 2G1.3(a)(2).

 b. <u>Specific Offense Characteristics</u>: The parties do not stipulate to the application of any specific offense characteristics. Both parties are free to argue for or against the application of any specific offense characteristics.

 c. The total offense level for this count is no less than 30.

 d. <u>Cross-Reference</u>: Pursuant to U.S.S.G. §§ 2G1.3(c)(1) and 3D1.2(d), the offenses relating to each of the victims in the case are specifically excluded from the grouping rules. Because there are at least three victims in this case, there are no

6

Plea Agreement
U.S. v. Tynisha Hornbuckle
2:11-CR-327 MCE

less than three groups of offenses that each count as a unit. See U.S.S.G. § 3D1.4(a). At least three (3) levels are therefore added to the highest offense level. Id.

   **2. Adjustments:**

   a. Acceptance of Responsibility. See paragraph III(B)(2) above.

   b. Adjusted Offense Level: The parties anticipate that the adjusted offense level will be no less than 30.

   **3. Criminal History:** The defendant's criminal history will be determined by the United States Probation Office.

   **4. Departures or Other Enhancements or Reductions:** Except as noted above, the parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references. Specifically, the United States does not seek application of an aggravating role under U.S.S.G. § 3B1.1. The defendant is permitted to make an argument in mitigation pursuant to 18 U.S.C. § 3553. The government specifically reserves the right to oppose any variance under 18 U.S.C. § 3553, and may respond to any argument for a variance made by the defendant.

## VII.

### WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena

witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

**B. Waiver of Appeal and Collateral Attack**: The defendant understands that the law gives her a right to appeal her conviction and sentence. The defendant reserves the right to appeal the application of any specific offense characteristic and the sentence imposed by the Court. As to all other matters, she agrees as part of her plea, however, to give up the right to appeal the conviction. She specifically gives up her right to appeal any order of restitution the Court may impose.

Regardless of the sentence she receives, the defendant also gives up any right she may have to bring a post-appeal attack on her conviction or her sentence. She specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking her conviction or sentence.

Notwithstanding the agreement in paragraph III.A. above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or reduce or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses she

might have to the government's decision. In particular, she agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs**: The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

**D. Sex Offender Registration**: Defendant understands that by pleading guilty, she may be required to register as a sex offender upon her release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, she may be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout her life. The defendant understands if required to register, that she shall keep her registration current, and shall notify the state sex offender registration agency or agencies of any changes to her name, place of residence, employment, or student status, or other relevant information. If required to register, Defendant shall comply with requirements to periodically verify in person her sex offender registration information. Defendant understands that she may be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements that might be imposed. Defendant further

| | |
|---|---|
| 1 | understands that, under 18 U.S.C. § 4042(c), if she is required to |
| 2 | register, notice will be provided to certain law enforcement agencies |
| 3 | upon her release from confinement following conviction. If required |
| 4 | to register, as a condition of supervised release, defendant shall |
| 5 | initially register with the state sex offender registration in |
| 6 | California, and shall also register with the state sex offender |
| 7 | registration agency in any state where defendant resides, is employed, |
| 8 | works, or is a student, as directed by the Probation Officer. If |
| 9 | required to register, the defendant shall comply with all requirements |
| 10 | of federal and state sex offender registration laws, including the |
| 11 | requirement to update her registration information, and shall provide |
| 12 | proof of registration to the Probation Officer within 72 hours of |
| 13 | release from imprisonment. |

## VIII.

### ENTIRE PLEA AGREEMENT

| | |
|---|---|
| 16 | Other than this plea agreement, no agreement, understanding, |
| 17 | promise, or condition between the government and the defendant exists, |
| 18 | nor will such agreement, understanding, promise, or condition exist |
| 19 | unless it is committed to writing and signed by the defendant, counsel |
| 20 | for the defendant, and counsel for the United States. |
| 21 | /// |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

## IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: April 29, 2012　　　　　　　/s/ Bruce Locke
　　　　　　　　　　　　　　　　　BRUCE LOCKE
　　　　　　　　　　　　　　　　　Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: April 29, 2012　　　　　　　/s/ Tynisha Hornbuckle
　　　　　　　　　　　　　　　　　TYNISHA MARIE HORNBUCKLE
　　　　　　　　　　　　　　　　　Defendant

**C. Attorney for United States:** I accept and agree to this plea agreement on behalf of the government.

DATED: 5/3/12　　　　　　　　　　BENJAMIN B. WAGNER
　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　By: /s/ Kyle Reardon
　　　　　　　　　　　　　　　　　KYLE REARDON
　　　　　　　　　　　　　　　　　Assistant U.S. Attorney

**EXHIBIT "A"**

**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Starting in 2008, the defendant worked with her sisters and mother to pimp-out minor females, and to pimp-out minors and adults. At that time, a runaway named "P.H." started working as a prostitute for the defendant. This victim was a minor who worked for the defendant until August 2011. During this time, victim "A.Hi.," also worked for the defendant. Victim "A.Hi." was only 16 years old when she started working as a prostitute for the defendant. The defendant knew that "P.H." and "A.Hi." were minors when they worked for her. Adult females that worked as prostitutes for the defendant included victim "R.B." and Jackie Wade.

The defendant was also the pimp for another minor victim, "A.He.," who was 17 years old when she started working for the defendant. Later, victim "A.He." started working as a prostitute for the defendant's sister, Tamrell Hornbuckle. Victim "A.He" worked for Tamrell Hornbuckle after she turned 18 years old.

All of the prostitution activity described above occurred in and around Sacramento, California, in the Eastern District of California.

The victims who worked as prostitutes gave money that they earned for engaging in commercial sex acts directly to the defendant and Tamrell Hornbuckle. The females took orders from the defendant and Tamrell hornbuckle about when to work, where to work, how much to charge, and with whom to do dates.

Dates were generally arranged through cell phone calls made to phones controlled by the defendant and Tamrell Hornbuckle. At the

conclusion of the date, the victims would generally call their pimp to pick them up. The use of the cell phones was in and affecting interstate commerce. Dates would also occasionally take place at local motels. These motels were often near major interstates, and they served interstate travelers.

The defendant received assistance from her sisters. Occasionally, the defendant's sisters, Latrelle and Cherrelle Hornbuckle would drive females that worked for the defendant to dates. On occasion, the defendant's sisters also picked up the prostitutes after dates. Finally, the defendant used her sisters' residences, as well as her mother's, for prostitution. In exchange, the defendant gave some of the money that was earned from these dates and that she received from the girls who worked for her to her sisters or mother.