BENJAMIN B. WAGNER
United States Attorney
KYLE REARDON
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
(916) 554-2700
(916) 554-2900 FAX

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHERELLE ELIZABETH HORNBUCKLE,

Defendant.

CASE NO. 2:11-CR-00327 MCE

**GOVERNMENT SENTENCING MEMO**

The United States of America, by and through the undersigned attorneys, respectfully submits this Sentencing Memorandum for defendant Cherelle Elizabeth Hornbuckle. For the reasons stated herein, the United States asks the Court to impose a sentence of 121-months imprisonment, to be followed by a 10-year term of supervised release.

I. BACKGROUND

On July 28, 2011, the Grand Jury returned an indictment charging the defendant with conspiracy in violation of 18 U.S.C. § 371, and multiple counts of sex trafficking of minors in violation of 18 U.S.C. § 1591. On May 3, 2012, the defendant pleaded guilty to Count 3 alleging a violation of 18 U.S.C. § 1591(a)(2). C.R. 111.

The defendant pleaded guilty pursuant to a plea agreement. The parties stipulated to application of U.S.S.G. § 2G1.3(a)(2) and a base offense level of 30. C.R. 120. Pursuant to the agreement, the defendant also stipulated to application of a two-level increase pursuant to U.S.S.G. § 2G1.3(b)(2)(B) (unduly influencing a minor to engage in a prohibit sex act), and a two-level increase pursuant to U.S.S.G. § 2G1.3(b)(4) (commercial sex act). Id. The defendant also agreed that at least three additional levels should be added because there were three victims in the case. Id.

The parties agreed to apply a minor role adjustment pursuant to U.S.S.G. § 3B1.2(b), and three-level adjustment for her acceptance of responsibility. Id. Based upon the stipulations above, the parties anticipated an adjusted offense level of no less than 32. Id. These stipulations resulted in an anticipated guideline range of no less than 121 to 151 months. Id.

The plea agreement permitted a defense argument in mitigation pursuant to the factors found at 18 U.S.C. § 3553(a). The United States was permitted to respond to any arguments made by the defendant. Id.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The maximum sentence that may be imposed for a violation of 18 U.S.C. § 1591(a)(2) is no less than 10 years and to up to life imprisonment, a fine of $250,000, and a lifetime period of supervised release.

### B. Sentencing Guidelines Calculation

The Probation Officer found the combined adjusted offense level to be 30, and applied an additional four levels pursuant to the specific offense characteristics found at USSG § 2G1.3(b)(2)(B) and (4), subtracted two-levels for a minor role adjustment, see U.S.S.G. § 3B1.2(a), added three levels pursuant to the grouping rules at Chapter Four of the Sentencing Guidelines, and recommended a three-level reduction in offense level for acceptance of responsibility, see U.S.S.G. § 3E1.1. PSR at ¶ 41-78. The total offense level was determined to be 32, PSR at ¶ 78; and the criminal history category was

determined to be II, id. at 83. The Probation Officer found the guideline range to be 135 to 168 months. Id. at 110

C. The Probation Officer's Recommended Sentence

The Probation Officer recommends a 135-month sentence, to be followed by a ten-year term of supervised release.

III. GOVERNMENT'S RECOMMENDATION

The United States asks the Court to impose a sentence of 121-months imprisonment, to be followed by a ten-year term of supervised release. This sentence is below the applicable guideline range for the defendant, yet still serves the sentencing goals of 18 U.S.C. § 3553. In particular, this sentence is appropriate given the entirety of the defendant's criminal conduct, and the need to promote deterrence. Id. at (a)(2)(A), (B). The sentence also properly considers the nature and circumstances of the conduct in this case, and the history and characteristics of the defendant. Id. at (1). Finally, a 121-month sentence will not lead to an unwarranted sentencing disparity.

A. The Guideline Range in this Case is 135 to 168 Months.

1. The Defendant's Objection to a Two-level Increase Pursuant to U.S.S.G. § 2G1.3(b)(2)(B) Should Be Denied.[1]

The probation officer correctly applied a two-level increase pursuant to U.S.S.G. § 2G1.3(b)(2)(B) because the defendant "unduly influenced a minor to engage in prohibited sexual conduct [.]" To qualify for this increase a defendant must have "compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3(b)(2)(B), Application Notes. Monetary inducement can constitute undue influence. In United States v. Brooks, 610 F.3d 1186, 1199–1200 (9th Cir. 2010), the defendant unduly

---

[1] The defendant filed her objection on December 11, 2012. This filing was titled a formal objection, however, it was submitted at the time informal objections were due to the Probation Officer. Accordingly, the Probation Officer responded to the objection as if it were an informal objection. The United States' argument on this issue assumes that the defendant will continue to pursue this objection at judgment and sentencing.

influenced two impoverished and homeless minors by offering them money and a comfortable lifestyle if they worked as prostitutes. Although the Supreme Court and the Ninth Circuit have not addressed the role of violence in the context of U.S.S.G. § 2G1.3(b)(2)(B), in other contexts violence compromises the voluntariness of an individual's behavior. c.f. e.g. Brown v. Mississippi, 297 U.S. 278, 285- 86 (1936)(confessions obtained by violence are involuntary).

(a) The Defendant Stipulated to Application of the Specific Offense Characteristic.

The defendant agreed in the plea agreement to the application of a two-level increase for unduly influencing a minor to engage in prohibited sexual conduct. Id. at 120. In spite of this agreement, the defendant objects to application of this two-level increase. To the extent that the defendant persists in this objection at the judgment and sentencing hearing, the United States reserves the right to file a motion asking the Court to find the defendant in breach of the plea agreement, and to permit the United States to either withdraw from that agreement, or to no longer be bound by the obligations contained therein.

(b) Minor Victims Were Unduly Influenced to Engage in Prostitution.

As the presentence report correctly notes, victims "A.He." and "P.H." were the recipients of abuse and threats of violentce by the defendant and her coconspirators, and witnesses to multiple acts of violence committed by the defendant and her sisters against others. These threats and acts of violence unduly influenced "A.He." and "P.H." into working as prostitutes for the defendants.

Victim "A.He." testified during the sentencing hearing of codefendants Tynisha and Tamrell Hornbuckle.[2] During this testimony, "A.He." testified about her personal situation following her arrival in Sacramento as a 17-year-old runaway. "A.He."

[2] A complete copy of the transcript from this sentencing hearing is available at C.R. 149.

testified that she started working as a prostitute because she was "homeless," "cold," "had no family," and "nowhere to go." Tr. at 76:20-24.

After being recruited by Tynisha Hornbuckle, "A.He." said that her personal circumstances did not improve. She had no contact with her family, no employment, and no support from charities or social services agencies. Id. at 93:22-94:22. She went on to state that she did not have a high school education, driver license, and that all of her possessions at that point in her life fit into her backpack. Tr. at 95:12-96:12.

"A.He." said that Tynisha Hornbuckle, the defendant's youngest sister, was her pimp. Tr. at 82:7-9. She described a pimp as an individual who persuades or forces a prostitute to work for them, and collects the money that the prostitutes earn from her dates. Tr. at 77:3-6. She later testified clearly that she had no option about when to work when she was with Tynisha Hornbuckle. Tr. at 177:5-7; see also Tr. at 105:3-11 ("Were there days that you didn't want to work?" "Yes." "Did you tell Tynisha that you didn't want to work?" "Yes." "And what was her response?" "Just do a few. Just do one or two.") She went on to state that when Tynisha Hornbuckle told her to work, then she had no option but to do the date. Id. at 177:8-10. This unequivocal testimony makes it clear that victim "A.He." was unduly influenced to engage in commercial sex acts; the two-level increase is properly applied.

As it concerns victim "P.H.," the record is even clearer. "P.H." was unduly influenced to engage in prostitution as a result of, among other things, the conditions in which she lived with the Hornbuckle family and the near-daily beatings she suffered. According to victim Wade, it was Tynisha Hornuckle who bought "P.H.'s" food, clothes, decided where she would work, decided when she would work, decided how she was going to dress when she worked, and took all of the money that "P.H." made as a prostitute. Id. at 36:9-23. Victim Wade also described two instances of abuse that she remembered "P.H." enduring. Id. at 39:6-40:24.

"A.He.'s" description of the abuse suffered by "P.H." added more details, and was specific, graphic, and moving. According to "A.He," "P.H." was the victim of beatings

"almost every day, if not every day." Id. at 109:7. The acts of violence against "P.H." included "[anything] from a slap to a full-on beating." Id. at 110:14.

(c) The Two-Level Increase for Undue Influence of Minors Applies to the Defendant.

The defendant was an active participant in the sex trafficking of multiple minor females. This operation relied on the use of force and coercion to unduly influence minors to engage in prohibited sexual conduct. The defendant's minor role adjustment does nothing to alter these facts.

The defendant admitted in her factual basis that she "worked with her sisters and mother to pimp-out minor females, and to pimp-out minor females and adults using force, fraud, and coercion;" that she transported and harbored girls that she knew to be juveniles who were engaged in prostitution; and that she received for those services. C.R. 120. The defendant also admitted to knowing that those victims took orders from their pimps (either Tynisha or Tamrell Hornbuckle) "about when to work, where to work, how much to charge, and with whom to do dates." Id. Victim "A.He." confirmed the defendant's role in the conspiracy, testifying that the defendant drove victims to dates. Tr. at 165:23-24.

The defendant's role in the conspiracy makes application of the two-level increase entirely appropriate. That the defendant received a minor role adjustment because her contact was limited, does nothing to mitigate the nature of that contact. There is no temporal or qualitative limitation on application of the two-level increase.

Even assuming that the minor role adjustment mitigates the defendant's personal involvement, the two-level increase would still apply. The specific offense characteristic at issue requires only that a "participant" in the crime "unduly influenced a minor." U.S.S.G. § 2G1.3(b)(2)(B). The record is unequivocal that participants in this conspiracy, namely Tynisha and Tamrell Hornbuckle, the victims' pimps, unduly influenced a minor, and that the defendant was aware of that conduct.

///

B. The Nature and Circumstances of the Defendants' Actions Merit the United States' Recommended Sentence.

1. The Defendant and Her Family Violently Exploited Children for their Own Financial Enrichment.

As discussed in detail in the presentence report, the defendant and her sisters were involved in the prostitution of numerous children, young adults, and women for several years. Indeed, by all accounts, pimping was the Hornbuckle family business. In order to promote their business, the Hornbuckle family engaged in physical and emotional violence and coercion to control their victims. The United States requested sentence recognizes the seriousness of the defendant's criminal activities.

2. The Defendant Made No Significant Effort to Stop the Criminal Activity She Participated In.

In her formal objections, the defendant argues that she "went out of her way" to protect the victims in this case, and worked to "keep both Tynisha and Tamrell calm so they would not hit any of the girls." C.R. 183, Def.'s Formal Obj. at 2:18-24. The veracity of this claim is in serious doubt given the facts the defendant admitted to. Moreover, had the defendant truly been committed to protecting the 13-year-old, 16-year-old, and 17-year-old victims, she would have done more.

As it was, when she wasn't "protecting" the victims in this case, the defendant was driving them to dates, allowing them to use her residence in order to prostitute, and accepting money in return. These are the actions of a pimp, and they merit the severe sentence requested by the United States. The defendant benefitted financially from the sexual exploitation of children too young and vulnerable to protect themselves. A sentence of 121-months is entirely appropriate in this case.

C. The Requested Sentence is Essential to Deterring Future Criminal Behavior.

With its requested sentence of 121-months, the United States hopes to deter the defendant and others who may be involved in the commercial sexual exploitation of children. The importance of deterring others who might "pimp-out" underage females cannot be denied. Comprehensive research documenting the number of children

engaged in prostitution in the United States is scarce. However, it was estimated in 2001 that approximately 293,000 American youth are currently at risk of becoming victims of commercial sexual exploitation. Estes Report at 11-12; see also Mia Spangenberg, *Prostituted Youth in New York City*: An Overview (available at http://www.ecpatusa.org/ child_prosti_us.asp).

The majority of American victims of commercial sexual exploitation tend to be runaway youth who live on the streets and become victims of prostitution. Id. at 11-12. As in this case, these children generally come from homes where they have been abused or from families that have abandoned them. See Estes Report at 3. These victims' often become involved in prostitution as a way to support themselves financially or to get the things they want or need. Id.

The average age at which girls first become victims of prostitution is 12-14. Estes Report at 92. Of the girls engaged in formal prostitution, about 75% worked for pimps like the defendant's sisters. Estes Report, Executive Summary at 7. Pimp-controlled commercial sexual exploitation of children is linked to escort and massage services, private dancing, drinking and photographic clubs, major sporting and recreational events, major cultural events, conventions, and tourist destinations. Id. About one-fifth of these children become entangled in nationally organized crime networks and are trafficked nationally. Id. at 8.

There is no doubt that a number of factors have combined to create the distressing statistics outlined above. Among those factors are breakdowns in familial relationships, sexual abuse, and the use of narcotics, many of which often occur long before people like the defendant and her sisters target young females and bring or reinsert them into the world of prostitution. Unfortunately, the Court has little power to address these root causes of underage prostitution in order to prevent its occurrence.

The Court does have the power to affect those who might take advantage of those circumstances. The United States' requested sentences will do that by sending a message to others about the serious consequences of their criminal actions. It is only

with such messages that the Court can deter others who might traffic in underage females.

The Court should not doubt its power to affect the relevant community's behavior with its sentences. Indeed, in this case, the undercover recording shows the defendant's sisters discussing the lengthy sentences that their fellow pimps had recently received. The Court can send a message with its sentence that the United States believes will ring loud and clear in the ears of others who might consider exploiting children.

D. The Requested Sentence Will Promote Respect for the Law.

The requested sentence will promote respect for the law. The defendant's willingness to exploit minors for her own purposes is offensive to both the laws and morals of civilized society. Moreover, since being arrested in this case, the defendant has struggled to comport her behavior to those required by the Court as a condition of Pretrial Release. See PSR at ¶ 3.

In addition, and of greater concern, the defendant engaged in misconduct even after becoming aware of the United States' investigation in this case. Law enforcement has had numerous contacts with members of the defendant's family. See PSR at ¶¶ 9, 10, 11, 21. In April 2011, FBI agents interviewed the defendant about her family's involvement in the prostitution of minors. PSR at ¶ 22. In spite of these facts, the defendant chose to commit fraud in July 2011, and then fail to surrender following her conviction for that offense. Id. at ¶¶ 80-82. The defendant clearly fails to recognize and appreciate the seriousness of her conduct.

E. The Recommended Sentence Is Consistent with Those Given to the Codefendants.

The United States seeks a sentence below the applicable guideline range in this case. As argued above, this sentence is entirely reasonable, and is consistent with the

guideline range the parties anticipated during pretrial negotiations.[3] Moreover, such a sentence would be consistent with each of the codefendants, each of whom received guideline sentences.

## IV. CONCLUSION

For the reasons stated herein, the United States asks the Court to impose a sentence of 121-months imprisonment to be followed by a 10-year term of supervised release.

DATED: January 17, 2013

Respectfully Submitted,

BENJAMIN B. WAGNER
United States Attorney

By: */s/ Kyle Reardon*
KYLE REARDON
Assistant U.S. Attorney

[3] The plea agreement permits an argument for a guideline sentence based upon Probation Officer's calculations. However, during pretrial negotiations, the parties anticipated a criminal history category I. Consequently, the United States' recommendation is consistent with the representations it made during pretrial negotiations.